RENDERED: SEPTEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0839-MR

SETH PAYNE                                                          APPELLANT

v.
APPEAL FROM GRAYSON CIRCUIT COURT
HONORABLE KENNETH HAROLD GOFF, II, JUDGE
ACTION NO. 16-CI-00265

DANNY JO SWIFT                                                       APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, TAYLOR, AND L. THOMPSON, JUDGES.

TAYLOR, JUDGE: Seth Payne brings this appeal from a June 18, 2020, Order

Granting Partial Summary Judgment, entered by the Grayson Circuit Court, which

denied in part Payne's motion for summary judgment and assertion of qualified

official immunity as to all claims asserted by Smith. For the reasons stated, we

reverse and remand.

BACKGROUND

The underlying facts of this case have been succinctly set forth by the

circuit court, as follows:

On September 4, 2015, the Grayson County
Sheriff's Office and the Greater Hardin County Narcotics
Task Force detained Danny Swift (hereinafter "Swift")
during a drug raid of Swift's residence. Law
enforcement found drugs on Swift's person and
numerous weapons in his residence. While law
enforcement was executing a search warrant, Swift was
escorted to the back porch of the house and handcuffed
behind his back. The handcuffs were later moved to the
front of his body because Swift complained about the
pain he was experiencing in his wrists.

Swift claimed he needed to relieve himself. It is
unclear whether he received permission to do so.
According to Swift, he walked 100-200 yards away from
the porch. Instead of returning to the back porch, Swift
instead sat down in a hole and allegedly fell asleep.
Once the officers realized Swift was missing, they
attempted to relocate him. Approximately an hour and a
half passed until Trooper Payne (hereinafter "Payne")
showed up with his canine, Fero.

Deputy Beasley (hereinafter "Beasley")
accompanied Payne during the search for Swift. Beasley
claimed that after searching the property with flashlights
and yelling for Swift with no response, Payne and Fero
were called to the scene. Both Beasley and Payne stated
in their affidavits that several canine warnings were
given with no response. Beasley stated that numerous
weapons had been recovered from the main building of
the property and that the buildings located on the rear of
the property had not been searched, which made the
officers fear for the safety and well-being of themselves
and others since Swift may have had access to a weapon

-2-

and have been armed. Swift argued that if they had called his name, he would have woken up. Instead, he claimed that they never called his name and instead released Fero with no warning.

Fero located and apprehended Swift. There is a dispute between the parties as to whether this was just a "bite" or a "bite and hold." The bite resulted in injuries including lacerations to the bone in Swift's cheek, infraorbital space, and nose, as well as a fractured nose, and damage to his right eye and sinuses. Swift's injuries required plastic surgery.

June 18, 2020, Order at 1-2.

On September 6, 2016, Swift filed a complaint in the Grayson Circuit Court against, *inter alios*, Payne. Therein, Swift claimed that Payne's use of the police canine, Fero, constituted unreasonable force under the Fourth Amendment to the United States Constitution and sought damages under 42 United States Code (U.S.C.) § 1983. Swift also asserted the following claims under Kentucky law – negligence per se, gross negligence per se, negligence, and gross negligence. Swift sought both compensatory and punitive damages.

Payne filed an answer and asserted the defense of qualified official immunity. Payne then filed a motion for summary judgment. In the motion for summary judgment, Payne argued that his use of Fero did not constitute excessive force under the Fourth Amendment and that he was neither negligent nor grossly negligent in his use of Fero. In any event, Payne maintained that he was entitled to the defense of official immunity.

In response to the motion for summary judgment, Swift argued that Payne's use of Fero amounted to excessive force pursuant to the Fourth Amendment. Swift maintained that he was sleeping and was not actively resisting when Fero bit and held him. Swift also claimed that Payne's use of Fero violated Kentucky State Police Use of Force Policy. Thus, Swift argued that summary judgment was improper, and Payne was not entitled to qualified official immunity.

By order entered June 18, 2020, the circuit court rendered a partial summary judgment. The court determined that material issues of fact precluded summary judgment upon qualified official immunity as to Smith's claim under 42 U.S.C. § 1983. The court also concluded that material issues of fact precluded summary judgment upon qualified official immunity as to Swift's claims of negligence and gross negligence. However, the circuit court did grant summary judgment in favor of Payne upon the claims of negligence *per se* and gross negligence *per se*. This appeal follows.

STANDARD OF REVIEW

To begin, summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991); Kentucky Rules of Civil Procedure (CR) 56.03. All facts and inferences therefrom are to be viewed in a light most favorable to the nonmoving party. *Id.* Effectively, our review of a

summary judgment is *de novo*. *Peterson v. Foley*, 559 S.W.3d 346, 348 (Ky. 2018).

However, as a general rule, our appellate jurisdiction is restricted to final judgments. CR 54.01. And, "an appeal from the denial of a motion for summary judgment would not be permitted because it is regarded as interlocutory." *Steffan v. Smyzer by and through Rankins*, 540 S.W.3d 387, 390-91 (Ky. App. 2018). However, in *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883 (Ky. 2009), the Kentucky Supreme Court carved out an exception to this general rule. Therein, the Court held "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." *Id.* at 887. Our review proceeds accordingly.

## ANALYSIS

Payne's initial argument on appeal is that the circuit court erred by failing to render summary judgment dismissing Swift's claim under 42 U.S.C. § 1983 upon qualified immunity grounds. Payne points out that Swift alleged that the use of Fero constituted excessive force violative of the Fourth Amendment of the United States Constitution. Payne recounts that Swift fled into a wooded area at night, and at the time, it was unknown if Swift was armed, as numerous weapons were seized at the residence. Additionally, Payne stresses that Fero was on a lead tracking Swift and that he gave multiple verbal canine warnings prior to locating

Swift. Payne states that when Fero seized Swift by biting him, Payne saw Swift hiding in a hole and thereupon removed Fero. Payne maintains that his use of Fero was objectively reasonable under these circumstances and did not amount to excessive force. Consequently, Payne claims that he is entitled to qualified immunity and that Smith's 42 U.S.C. § 1983 claim should be dismissed.

To be entitled to qualified immunity as to a 42 U.S.C. § 1983 claim, a court must consider "(1) whether an 'official's conduct . . . violate[d] a constitutional right,' and, if so, (2) whether 'that right was . . . clearly established at the time of the conduct.'" *LaPlante v. City of Battle Creek, Michigan*, 30 F.4th 572, 578-79 (6th Cir. 2022) (quoting *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)). An officer's use of excessive force to effectuate an arrest of seizure is unreasonable and violates the Fourth Amendment of the United States Constitution. *Graham v. Connor*, 490 U.S. 386, 394-97 (1989). To determine if an officer's use of force was reasonable, we look to three factors:

> (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and [(3)] whether the suspect actively resisted arrest or attempted to evade arrest by flight.

*LaPlante*, 30 F.4th at 579 (citation omitted). And, the court must consider the reasonableness of the use of force from the officer's perspective at the scene and must recognize that an officer is "often forced to make split-second judgments – in

circumstances that are tense, uncertain, and rapidly evolving[.]" *Graham*, 490 U.S. at 397. In our analysis, we shall view the facts and inferences therefrom in a light most favorable to Swift. *See Steelvest*, 807 S.W.2d 476.

The first factor is severity of the crime. It is undisputed that Payne was informed that a methamphetamine lab and several firearms were found at Swift's house. Additionally, Payne was informed that Swift had been handcuffed in the front, had fled the scene on foot at night, and had been missing for about an hour and a half. Payne also knew that Swift would be charged with several felonies and could have possibly obtained a weapon from outbuildings on the property. Based upon these undisputed facts, we believe this factor weighs in favor of Payne.

The second factor is the potential threat that Swift posed to Payne and to the public. Again, it is uncontroverted that Payne was handcuffed in the front and thus could have possibly obtained a weapon from outbuildings on his property. There were several weapons seized from within his home, and Swift fled into the woods at night. So, Swift secluded himself in a wooded area at night; a position that provided Swift with the opportunity to easily ambush Payne. Based upon these undisputed facts, we think a reasonable police officer under these circumstances would believe that Swift posed a threat to the officers' safety.

The third factor is whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing. Here, the facts are clear that Swift fled into a wooded area at night and hid in a hole. The police, including Payne, could not locate him until Fero seized Swift by biting and holding him. At this time, Payne entered and withdrew Fero. Swift testified that he fell asleep in the hole and did not hear the officers searching for him; however, Swift admitted that he was attempting to escape. Based upon these undisputed facts, it is clear that Swift's intent was to flee and escape arrest.

Considering the totality of circumstances in the light most favorable to Swift, we conclude that Payne's use of Fero did not constitute excessive force under the Fourth Amendment and that Payne was entitled to qualified official immunity. For this reason, the circuit court erred by failing to grant summary judgment dismissing Swift's claim under 42 U.S.C. § 1983.

Payne also asserts that the circuit court erred by denying his motion for summary judgment to dismiss Swift's negligence and gross-negligence claims upon the basis of qualified official immunity. Payne argues that his use of Fero constituted a discretionary act that was performed in good faith. Thus, Payne believes he is entitled to qualified official immunity.

Qualified official immunity is applicable to a discretionary act negligently performed by a public official when done so in good faith and within

the scope of the official's authority. *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). Thus, the public official must be performing a discretionary act as opposed to a ministerial act. *Id.* at 521. A public official has no qualified immunity in relation to the performances of a ministerial act. A ministerial act is generally "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* at 522. Conversely, a discretionary act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Id.* at 522.

In Kentucky, the good faith requirement of qualified official immunity has two components – objective and subjective. *Yanero*, 65 S.W.3d 510. The Kentucky Supreme Court has defined the two components:

> Thus, bad faith [or the lack of good faith] 'can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded a person in the plaintiff's position, i.e., objective unreasonableness.' Acting in the face of such knowledge makes the action objectively unreasonable. Or, bad faith can be predicated on whether the public employee 'willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive,' which requires a subjective analysis.

*Bryant v. Pulaski Cnty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011) (citations omitted). A lack of good faith may be demonstrated in one of two ways: (1) the

public official violated a clearly established constitutional, statutory, or other right of plaintiff, or (2) the public official acted willfully, maliciously, or with a corrupt motive to cause harm to plaintiff. *Yanero*, 65 S.W.3d at 523; *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006). If the public officer demonstrates *prima facie* that her act was discretionary and performed within the scope of her duty, the burden then shifts to plaintiff to demonstrate the discretionary act was not performed in good faith. *Sloas*, 201 S.W.3d 469.

Relevant herein is the Kentucky State Police Canine Section Standard Operating Procedures CN-07, which provides, in part:

> A. Canine teams shall provide assistance to all Kentucky State Police personnel for criminal investigations when tracking suspects is required. Canine teams shall also provide assistance to Kentucky State Police personnel in criminal investigations when locating narcotics is required.
>
> . . . .
>
> G. Tracks for missing persons should be done on lead, and the handler shall use the utmost care to insure the safety of persons being tracked and officers assisting in area.

Citing to the above, Swift believes that Subsection G imposes a ministerial duty upon Payne "to use the utmost care to insure the safety of persons being tracked." Swift's Brief at 14. While we agree that Subsection G states that an officer shall

-10-

use the utmost care to ensure the safety of others, we disagree that Subsection G creates a ministerial duty; rather, we think it is a fundamentally discretionary act.

The actual task of handling a canine tracking an individual involves a multitude of decisions, some of which must be made by the handler on a moment's notice in uncertain circumstances. These type of decisions are inherently discretionary in nature, as opposed to well-defined rules or duties. Therefore, we conclude that Payne's use of Fero to apprehend Swift was discretionary.

As to good faith, we do not believe that Swift has set forth facts or evidence illustrating that Payne violated Swift's rights or acted with malicious intent to cause injury or a deprivation of rights. *See Haugh v. City of Louisville*, 242 S.W.3d 683, 686-87 (Ky. App. 2007).[1] Therefore, we hold that Payne is entitled to qualified official immunity against the claims of negligence and gross negligence.

In sum, we are of the opinion that the circuit court erroneously denied summary judgment in favor of Payne, as he sufficiently established he was entitled to qualified official immunity for all claims asserted by Swift. Accordingly, we reverse the circuit court's June 18, 2020, Order as concerns qualified official

---

[1] Danny Jo Swift also cites to Kentucky Revised Statutes (KRS) 503.090 and argues that Seth Payne may have "deliberately ignored this statute." Swift's Brief at 15. However, Swift fails to cite to specific facts that could give rise to a violation of KRS 503.090.

immunity and remand for the circuit court to dismiss Swift's claims for negligence, for gross negligence, and claims asserted under 42 U.S.C. § 1983.

For the foregoing reasons, the order of the Grayson Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Stacey A. Blankenship
Kristen N. Worak
Paducah, Kentucky

ORAL ARUGMENT FOR
APPELLANT:

Stacey A. Blankenship
Paducah, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

Timothy L. Stevenson
Bowling Green, Kentucky