NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0228n.06

Case No. 22-1338

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DREW PARSONS,

    Plaintiff-Appellant,

v.

CITY OF ANN ARBOR, MICHIGAN, et al.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
May 12, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

OPINION

---

Before: SILER, COLE, and NALBANDIAN, Circuit Judges.

SILER, Circuit Judge. Drew Parsons filed a 42 U.S.C. § 1983 claim against Justin Kandt, an officer with the Ann Arbor Police Department, alleging that Kandt used excessive force and committed assault and battery against him while executing an investigatory detention. Kandt filed a motion for summary judgment, arguing that he was entitled to immunity for both the excessive force and assault and battery claims. The district court agreed with Kandt and entered judgment in his favor. We **AFFIRM**.

**I.**

In November 2018, Parsons traveled to Ann Arbor, Michigan, to visit his girlfriend. Parsons and his girlfriend went to a popular college bar, where they "drank to excess" and "were

asked to leave." While a bouncer and James Roche, a manager, were escorting Parsons off the premises, Parsons struck Roche in the face.[1]

A little before midnight, Kandt was on duty outside the bar and observed Parsons for the first time. The encounter between Kandt and Parsons was captured by both Kandt's dash camera and body camera. Kandt observed that Parsons was "highly intoxicated" and was being escorted out of the bar with his shirt "in . . . disarray, unbuttoned, somewhat hanging off his body." Kandt also observed Parsons "argu[ing] . . . back and forth" with the staff as he was exiting the bar. Kandt approached Parsons, the bouncer, and Roche, and the bouncer told Kandt that Parsons had just assaulted Roche. Although Parsons's girlfriend attempted to pull Parsons away from the bar to take him home, Kandt separated Parsons from his girlfriend and the bar employees, with whom Parsons was still arguing, and began to execute an investigatory detention. Kandt walked Parsons over to his police car and commanded Parsons, three times in quick succession, to place his hands behind his back. Instead, Parsons tensed his arms and placed his left hand on Kandt's right wrist. Kandt then told Parsons a fourth time to put his hands behind his back and placed Parsons on the hood of his police car.

On the fourth command, Parsons briefly placed his hands behind his back. However, he then removed his hands from behind his back, quickly stood up, and started moving away from the police car and toward the street. Kandt interpreted this behavior as Parsons's attempt to flee, so he restrained Parsons's arms and executed a takedown maneuver. Parsons suffered facial lacerations, a fractured finger, and a concussion, and he continues to suffer from panic attacks in

---

[1] There is disagreement about the intentional nature of Parsons's contact with Roche. Roche told an officer on the scene that Parsons had not hit him intentionally, but Roche testified during his deposition that Parsons had struck him intentionally. The parties do not dispute, however, that within seconds of Kandt's approaching Parsons, a bar employee told Kandt that Parsons had just struck another employee in the face.

social settings. The county prosecutor charged Parsons with attempting to assault, resist, and obstruct a police officer, and Parsons pled no contest.

Following the incident, Parsons sued Kandt, and others,[2] alleging the use of excessive force and deliberate indifference under § 1983 and state law assault and battery. Kandt filed a motion for summary judgment, which the district court granted on qualified immunity grounds for the § 1983 claim and state law governmental immunity for the assault and battery claim. The court held that qualified immunity was appropriate because "no constitutional violation occurred" and that Kandt was entitled to state law governmental immunity because the evidence failed to demonstrate that Kandt had acted in bad faith. Parsons timely appealed.

## II.

## A.

We review de novo a grant of summary judgment based on qualified immunity. *Burnett v. Griffith*, 33 F.4th 907, 911 (6th Cir. 2022) (citation omitted). We view all facts and inferences in the light most favorable to the non-movant. *Foster v. Patrick*, 806 F.3d 883, 886 (6th Cir. 2015). If there is video evidence, this court views the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

---

[2] In addition to Kandt, Parsons sued the City of Ann Arbor (the "City"), the Ann Arbor Police Department (the "AAPD"), Sergeant Mark J. Pulford, Jr., Officer Ryan M. Scott, Officer Jeffrey D. Shafer, Jr., and Officer Eric D. Chinn, alleging the use of excessive force and deliberate indifference under 42 U.S.C. § 1983 against all parties; assault and battery against Kandt and Scott; gross negligence and intentional infliction of emotional distress against Pulford, Kandt, Scott, Shafer, and Chinn; and negligent supervision and training against the City and the AAPD. The defendants filed a motion to dismiss Parsons's complaint, which the district court granted in part and denied in part. The court granted the motion for every defendant except Kandt. As to Kandt, the court dismissed every claim except for the § 1983 excessive force claim and the assault and battery claim, before ultimately granting Kandt's motion for summary judgment. Parsons only challenges the grant of summary judgment on appeal.

Parsons alleges that Kandt used excessive force against him. Excessive force claims arising "in the context of an arrest or investigatory stop of a free citizen" are analyzed under the Fourth Amendment, which guarantees to citizens the right to be free from unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The excessiveness of an officer's use of force turns on whether it was reasonable "under the totality of the circumstances." *Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020) (citing *Graham*, 490 U.S. at 396).

Kandt argues that he is entitled to qualified immunity, which protects government officials "from civil-damages liability for violations of 'clearly established statutory or constitutional rights.'" *Burnett*, 33 F.4th at 911 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official is entitled to qualified immunity unless the plaintiff can establish that "(1) the facts show a violation of a constitutional right, and (2) the right at issue was clearly established when the event occurred such that a reasonable officer would have known that his conduct violated the plaintiff's constitutional right." *Foster*, 806 F.3d at 886 (cleaned up) (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)). The plaintiff "must establish both elements to proceed onward to the fact-finding stage," and the court may address the elements in either order. *Id.* at 887 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The district court found that Kandt did not violate Parsons's Fourth Amendment rights and declined to analyze whether he violated a clearly established right. However, we can resolve this case on clearly established grounds because "whether the law is clearly established presents a purely legal question that we need not leave to the district court to resolve." *Palma v. Johns*, 27 F.4th 419, 442 n.6 (6th Cir. 2022) (citing *Gossman v. Allen*, 950 F.2d 338, 342 (6th Cir. 1991)). Therefore, even if Kandt violated a constitutional right, if the right was not clearly established, summary judgment was appropriate.

A police officer violates a clearly established right when, at the time of his challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Zakora v. Chrisman*, 44 F.4th 452, 465 (6th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir. 2015) (citation omitted). Here, the pertinent inquiry is whether it was clearly established in November 2018 that a police officer could not use a takedown maneuver during an investigatory detention against an individual who has acted aggressively, is noncompliant, and the officer reasonably believes is trying to flee. We find that it was not.

We recently articulated that "takedown maneuvers are excessive when officers deal with a 'generally compliant' suspect, and that the police may not use physical force against a subdued, non-resisting subject." *LaPlante v. City of Battle Creek*, 30 F.4th 572, 583 (6th Cir. 2022) (citing *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006)). Takedown maneuvers are also "excessive when a suspect surrenders to the police, does not offer resistance, and/or when the interaction happens in the presence of multiple officers." *Id.* (collecting cases).

Here, the facts are distinguishable from our established precedent regarding takedown maneuvers that constitute excessive force. Kandt was the only officer on the scene, he was trying to conduct an investigatory detention with an intoxicated individual who had just struck another individual in the face, and video evidence shows that Parsons was not generally compliant. Parsons started to place his hands behind his back after Kandt's fourth command, Parsons then pulled his hands away from Kandt, stood up from the police car, and turned toward the street away

from Kandt. There is no clearly established principle that prevents officers from taking individuals to the ground during an investigatory detention who have acted aggressively, failed to follow an officer's commands, and whose actions suggest they were trying to flee. *See Burchett v. Kiefer*, 310 F.3d 937, 940, 944 (6th Cir. 2002) (finding "initial force used to restrain" plaintiff, not excessive when plaintiff "twisted and turned" and "jump[ed] around" when officer tried to handcuff him); *see also Earnest v. Genesee Cnty.*, 841 F. App'x 957, 960 (6th Cir. 2021) (holding officer's use of takedown maneuver reasonable when plaintiff attempted to strike an emergency responder and "refused to put his hands behind his back despite repeated instructions to do so").

Parsons cites to five cases that he says demonstrate it was clearly established that Kandt's actions were unconstitutional. However, the cases are all factually distinguishable. In *Harris v. City of Circleville*, an individual was violently taken down by officers after he had been "subdued and [did] not present a danger to himself or others." 583 F.3d 356, 360, 367 (6th Cir. 2009). In *Lawler v. City of Taylor*, an officer in the booking room at a police station threw the plaintiff to the ground and "added two knee strikes and an elbow jab" after the plaintiff was subdued. 268 F. App'x 384, 387 (6th Cir. 2008). In *Smoak v. Hall*, police officers threw the plaintiff to the ground after he had been handcuffed and jumped up when the police shot his dog. 460 F.3d 768, 775 (6th Cir. 2006). In *Shreve v. Jessamine County Fiscal Court*, police officers incapacitated an individual with pepper spray, threw her to the ground, and then "struck her . . . with a stick and repeatedly jumped on her . . . for about fifteen minutes." 453 F.3d 681, 687 (6th Cir. 2006). The final case, *Giannola v. Peppler*, involved a traffic stop in which an individual was pulled from his car, knocked to the ground, and handcuffed after he failed to get out of his vehicle. 142 F.3d 433, at *3 (6th Cir. 1998) (unpublished table decision). These cases are all distinguishable from the situation here where Parsons, a clearly intoxicated individual, had already struck someone, failed

to follow Kandt's repeated commands, and then moved like he was trying to escape. *Wesby*, 138 S. Ct. at 590 (holding that the clearly established standard "requires a high degree of specificity") (internal quotations and citations omitted). Therefore, because Kandt did not violate a clearly established right, summary judgment was appropriate.

**B.**

We also affirm the district court's grant of summary judgment as to Parsons's state assault and battery claim. Assault and battery are intentional torts under Michigan law. *Binay v. Bettendorf*, 601 F.3d 640, 653 (6th Cir. 2010). However, an officer is immune from intentional torts, such as assault and battery, if (1) his actions were taken during the course of his employment, and he was acting (or reasonably believed he was acting) within the scope of his authority; (2) he was acting in good faith and without malice; and (3) the acts were discretionary instead of ministerial. *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). Neither party contests that Kandt's actions occurred during the course of his employment, or that he was acting within the scope of his authority.

Under the second factor, Parsons argues that Kandt did not act in good faith "[f]or the same reasons that there are disputed issues regarding excessiveness of force." Good faith is a subjective test that "protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) (quoting *Odom*, 760 N.W.2d at 229). Here, the district court correctly held that Kandt did not act in bad faith. Kandt only used the takedown maneuver after Parsons failed to comply with his commands and was moving in such a way that a reasonable officer would believe he was trying to flee. Furthermore, Kandt was the only officer on the scene, and Parsons had allegedly just committed an act of violence. This case is distinguishable from a situation in

which an officer throws someone to the ground despite their full compliance with his orders. *See, e.g.*, *Harris*, 583 F.3d at 360.

Furthermore, as discussed above, because Kandt's actions were objectively reasonable, he acted in good faith. *See Grawey v. Drury*, 567 F.3d 302, 315–16 (6th Cir. 2009) (holding that because the officer's actions were objectively reasonable, he acted in good faith and is immune from state assault and battery claims). Therefore, the second prong is satisfied.

As to the third prong, Kandt's takedown of Parsons was a discretionary act as opposed to a ministerial act. "Discretionary acts are those that 'require personal deliberation, decision, and judgment'; ministerial acts 'constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice.'" *Fineout v. Kostanko*, 780 F. App'x 317, 330 (6th Cir. 2019) (quoting *Odom*, 760 N.W.2d at 226). Here, Kandt's use of a takedown maneuver required deliberation, decision, and judgment, as Kandt was responding to a situation in which Parsons had just exhibited aggressive behavior and was refusing to comply with his commands. *See Norris v. Lincoln Park Police Officers*, 808 N.W.2d 578, 582 (Mich. Ct. App. 2011) ("A police officer's decisions regarding how to respond to a citizen, how to safely defuse a situation, and how to effectuate the lawful arrest of a citizen who resists are . . . clearly discretionary." (citation omitted)). Therefore, the takedown was a discretionary act, and Kandt is entitled to state law governmental immunity from Parsons's assault and battery claim.

**AFFIRMED**.