RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DARRIN VANPELT,

                *Plaintiff-Appellant*,

  *v.*

CITY OF DETROIT, MICHIGAN; AARON LAYNE, Police Officer,

                *Defendants-Appellees*.

No. 22-1680

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Port Huron.
No. 3:21-cv-10352—Robert H. Cleland, District Judge.

Decided and Filed:  June 6, 2023

Before:  BOGGS, McKEAGUE, and THAPAR, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ON BRIEF:**  Amy J. DeRouin, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellant.  Linda D. Fegins, CITY OF DETROIT, Detroit, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

THAPAR, Circuit Judge.  Darrin VanPelt tried to escape while under arrest.  So Officer Aaron Layne tackled him and physically tried to lift him up.  Now, VanPelt claims that he was tackled and then lifted and dropped in violation of the Fourth Amendment.  The district court granted summary judgment, concluding Officer Layne was entitled to qualified immunity.  We affirm.

I.

Officer Layne pulled VanPelt over for driving a car with an illegal window tint.[1]  While running information on VanPelt and the vehicle, he called for backup.  When Officer Darryl Bennett responded, Layne informed him that "the plate doesn't come back to the car" and the "car smells like weed."  R. 46-8, 4:42–4:58.  The two officers approached either side of the vehicle and asked VanPelt and his passenger to step out.  Both complied.

To search VanPelt, Officer Layne placed him in handcuffs, informing him that he was "just being detained" for the search.  While patting VanPelt down, Officer Layne found several baggies of marijuana and one baggie of crack cocaine in VanPelt's jacket.  Although he'd admitted to having weed on him, VanPelt disclaimed knowledge of the crack cocaine.  He also insisted—five times in a row—that he had nothing more on him.

With VanPelt still in handcuffs, Officer Layne led him by his right arm towards the back seat of the police car.  Reaching to open the rear car door, Officer Layne momentarily released his grasp on VanPelt's arm.  VanPelt took off running, and Officer Layne gave chase.  Four seconds later, Officer Layne tackled VanPelt to the ground.

After the tackle, Officer Layne stood up and attempted to pull VanPelt to his feet, briefly grabbing VanPelt's hair in the process.  Officer Layne ordered VanPelt to stand, but VanPelt replied that he couldn't stand because his hip was broken.  So Officer Layne released his grip, and VanPelt fell back to the ground.  From there, he kept yelling that his hip was broken, and Officer Layne ceased trying to lift him.

Following VanPelt's continued complaints of pain in his left hip, Officer Layne flipped him onto his right side.  VanPelt continued to cry out.  After about twenty seconds, he admitted: "I got something else on me."  *Id.* at 8:51.  So Officer Layne searched VanPelt again.  This time, he uncovered a baggie in VanPelt's underpants containing more crack cocaine.

---

[1]In reciting the facts, we rely mainly on undisputed video footage from a police body camera on the scene.  For events not caught on film, we adopt VanPelt's version.  *Ashford v. Raby*, 951 F.3d 798, 800 (6th Cir. 2020) (citing *Scott v. Harris*, 550 U.S. 372, 378–80 (2007)).

VanPelt sued Officer Layne for using excessive force in violation of the Fourth Amendment and the City of Detroit for failing to adequately train and supervise Officer Layne. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). The district court granted summary judgment to the defendants, holding that Officer Layne didn't violate VanPelt's constitutional rights and was thus entitled to qualified immunity. VanPelt timely appealed.

II.

To overcome qualified immunity, VanPelt must show that Officer Layne (1) violated a constitutional right that was (2) clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The right at issue here comes from the Fourth Amendment, which prohibits police from using "unreasonable" force. U.S. Const. amend. IV; *see Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). Here, Officer Layne's tackle and subsequent attempt to lift VanPelt off the ground didn't violate the Fourth Amendment.

Because police officers making split-second decisions usually "face a range of acceptable options," we must defer to the officer's "on-the-spot judgment" in deciding what was reasonable. *Ashford*, 951 F.3d at 801 (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)). That means judges, from the comfort of their chambers, don't critique police officers' actions "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Instead, we consider what a reasonable officer on the scene would've done and look to all the circumstances, including "the severity of the crime," whether the suspect posed an immediate threat, and whether he was "attempting to evade arrest by flight." *Id.*

VanPelt argues Officer Layne used excessive force both by tackling him and trying to lift him off the ground. But Officer Layne's use of force throughout the encounter was objectively reasonable under the circumstances.

First, it was objectively reasonable for Officer Layne to tackle VanPelt. Video footage confirms that VanPelt actively resisted arrest by fleeing from Officer Layne. And when a suspect flees, police may use force to subdue him. *See Rudlaff v. Gillispie*, 791 F.3d 638,

641-42 (6th Cir. 2015). Indeed, we've repeatedly upheld even more severe uses of force in similar contexts. *See, e.g.*, *id.* at 641 ("Our cases firmly establish that it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest."). Here, Officer Layne's more moderate use of force was a reasonable tactic to impede VanPelt's flight.

VanPelt suggests it was "unnecessary" for Layne to tackle him, and that the officer could have subdued him using a different method. Appellant Br. at 25. But reasonableness doesn't "turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983). After all, officers making split-second judgments don't always have the luxury to select "only the best technique available at the time." *Ashford*, 951 F.3d at 801. Here, even assuming Officer Layne could've stopped VanPelt using a less severe technique, tackling VanPelt was reasonable.

Second, because VanPelt had just tried to flee, it was objectively reasonable for Officer Layne to restrain VanPelt after tackling him. Immediately after tackling VanPelt, Officer Layne attempted to pick him up off the ground, briefly grabbing VanPelt's hair. Officer Layne agreed that, by this point, VanPelt "no longer was a threat. He was no longer resisting or fleeing arrest." But at that point, a reasonable officer wouldn't have known that VanPelt was injured, because he hadn't said anything yet. Indeed, *while* Officer Layne was lifting him to his feet, VanPelt said: "[Y]ou broke my f—ing hip. You broke my hip, man." R. 46-8, 7:47–7:50. And Officer Layne also agreed, saying: "[T]he best way to describe it when he was [saying] that he was injured and I maintained control of him as long as I could until he was towards the ground." R. 46-6, Pg. ID 1162. The very next second, Officer Layne released his grip. R. 46-8, 7:51. VanPelt argues that he had "already been subdued" by the time Officer Layne started "yanking his prone and injured body around." Appellant Br. at 15. But the record and video do not establish any indication of excessive force after the tackling, only an effort to get VanPelt to his feet and then lowering him to the ground when VanPelt complained that he could not stand.

VanPelt also argues Officer Layne yanked him around in "a malicious manner plainly designed to inflict pain onto [his] already injured left hip." Appellant Br. at 33–34. Again, the video contradicts this account. After VanPelt fell back to the ground, Officer Layne only moved

him twice: once at VanPelt's request so he could rest on his uninjured side, and once to retrieve the bag of crack cocaine from VanPelt's underpants. *See* R. 46-8, 7:52–9:30. Regardless, our excessive-force analysis "is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (cleaned up). The record presents no evidence that Layne had "evil intentions," but even if he did, any such evidence would "not make a Fourth Amendment violation out of an objectively reasonable use of force." *Id.*

In sum, Officer Layne's use of force was reasonable, and he did not violate VanPelt's constitutional rights. Thus, Officer Layne is entitled to qualified immunity, and the district court properly granted summary judgment in his favor.

### III.

Vanpelt also sued the City of Detroit under *Monell*, which imposes municipal liability when a city's employees, acting pursuant to official policy or custom, commit constitutional violations. *See* 436 U.S. at 694–65. But without a constitutional violation, "[t]here can be no liability under *Monell*." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Because Vanpelt has not demonstrated that Officer Layne violated the Constitution, his *Monell* claim against the City of Detroit fails too.

*        *        *

We affirm.