NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0454n.06

Case No. 22-2112

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Oct 24, 2023

DEBORAH S. HUNT, Clerk

|  |  |
|---|---|
| BRUCE ORAN CUNNINGHAM, | ) |
| Plaintiff-Appellant, | ) |
|  | ) |
| v. | ) |
|  | ) |
| TROY PACKARD, in his individual capacity, | ) |
| Defendant-Appellee. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

THAPAR, J., delivered the opinion of the court in which SUTTON, C.J., joined. COLE, J. (pp 10–20), delivered a separate dissenting opinion.

THAPAR, Circuit Judge. Police Sergeant Troy Packard pushed Bruce Cunningham to the ground while arresting him for drunk driving. Cunningham claims this push violated the Fourth Amendment. The district court granted summary judgment to Sergeant Packard, concluding that he was entitled to qualified immunity. We affirm.

I.

Cunningham was on his way home from a night of drinking when Sergeant Packard tried to pull him over.[1] Even though Sergeant Packard activated his siren and lights, Cunningham didn't stop. Instead, he kept driving until he made it home, where he pulled into his driveway and got

---

[1] For these facts, we rely on dashcam footage from Sergeant Packard's patrol car. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). We take facts not caught on video in the light most favorable to Cunningham. *See VanPelt v. City of Detroit*, 70 F.4th 338, 339 n.1 (6th Cir. 2023).

out of his car. Sergeant Packard parked behind Cunningham, got out of his cruiser, and ordered Cunningham to get back in his car. Cunningham said "no, I'm not" and started walking toward Sergeant Packard.[2] R. 31-2 at 02:19–02:21. So Sergeant Packard pushed Cunningham away from him. Cunningham slipped on ice and fell to the ground, twisting his leg awkwardly on the way down. For three minutes, Cunningham struggled against Sergeant Packard's attempts to handcuff him. Eventually, backup officers arrived and arrested Cunningham. Cunningham went to jail and ultimately pled guilty to driving under the influence.

Cunningham sued Sergeant Packard for using excessive force in violation of the Fourth Amendment. The district court granted Sergeant Packard summary judgment, holding that he was entitled to qualified immunity because he used a reasonable amount of force. Cunningham timely appealed, challenging only Sergeant Packard's push.

II.

To defeat qualified immunity, Cunningham must show that (1) Sergeant Packard violated a constitutional right and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Cunningham fails at step one because he can't show that Sergeant Packard used unreasonable force.

A.

The Fourth Amendment prohibits police from using "unreasonable" force. *VanPelt*, 70 F.4th at 340. To judge reasonableness, we look through the eyes of a reasonable officer at the scene. *Puskas v. Delaware County*, 56 F.4th 1088, 1094 (6th Cir. 2023). That means we consider all the circumstances the officer faced, including the severity of the crime, whether the suspect

---

[2] Cunningham argues that he responded "Oh, I'm not" rather than "No, I'm not" to Sergeant Packard's order. Appellant Br. at 4. But the dashcam video "blatantly contradict[s]" that account. *Scott*, 550 U.S. at 380. As the district court found, Cunningham indeed said "no" and not "oh." R. 37, Pg. ID 256. More importantly, when Sergeant Packard ordered him to get back in the car, he said "I'm not." What he said before that is thus irrelevant.

posed an immediate threat to the officer or others, and whether the suspect actively resisted arrest. *VanPelt*, 70 F.4th at 340 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). As the circumstances change, so too does the amount of force an officer may reasonably use. The greater the threat a suspect poses, for example, the more force an officer can reasonably use to neutralize the threat. *See Barton v. Martin*, 949 F.3d 938, 953 (6th Cir. 2020); *see also Lustig v. Mondeau*, 211 F. App'x 364, 370 (6th Cir. 2006). Here, all the circumstances justified Sergeant Packard's use of force.

First, Sergeant Packard suspected Cunningham of several crimes, including drunk driving and fleeing and eluding. Our precedent calls these crimes "moderate in severity." *See Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 774–75 (6th Cir. 2004). Sergeant Packard was thus entitled to use a moderate degree of force to detain Cunningham. *See Graham*, 490 U.S. at 396 (explaining that the right to arrest "necessarily carries with it the right to use some degree of physical coercion" to effectuate it). In *Gaddis*, we held that these same two crimes justified pepper spraying a resisting suspect. *Gaddis*, 364 F.3d at 774. Like the officers there, Sergeant Packard could have reasonably concluded that Cunningham "would pose a danger to other motorists if allowed to flee." *Id.* And like the suspect in *Gaddis*, Cunningham "had announced his desire" not to comply with police commands. *See id.* Thus, in the face of Cunningham's "moderately severe" crimes, we can't fault Sergeant Packard for using minimally forceful tactics.

Second, a reasonable officer would have perceived the situation as threatening. Sergeant Packard didn't know if Cunningham was armed. Nor did he know if there were other potential threats in the car or the house.[3] *See Zuress v. City of Newark*, 815 F. App'x 1, 5–6 (6th Cir. 2020).

---

[3] The dissent faults Sergeant Packard for failing to cite a case showing that a reasonable officer may perceive danger from the unknown occupants of a house at the end of a suspect's active flight. Dissenting Opinion at 16 n.2. But this misplaces the burden. It's the *plaintiff's* burden to show that the officer acted *un*reasonably "in the particular circumstances before him." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Cunningham hasn't made that showing, much less done so with an appropriately "high degree of specificity." *Id.*

Moreover, Cunningham came within striking distance of Sergeant Packard. At that point, Sergeant Packard had a right to keep Cunningham from coming any closer. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018). And "perhaps most importantly," Cunningham had repeatedly disobeyed Sergeant Packard's commands. *Zuress*, 815 F. App'x at 5. From Sergeant Packard's perspective, Cunningham was a drunk, defiant suspect who had just led him to an unknown location and was advancing toward him. A reasonable officer would have felt threatened in those circumstances.

The dissent correctly notes that Cunningham was walking toward his house. *See* Dissenting Opinion at 10, 14, 16, 19. That fact, in its view, means Sergeant Packard couldn't have perceived Cunningham as a threat. But as Cunningham walked toward his house, he also walked toward Sergeant Packard. A screenshot from the dashcam immediately before the push demonstrates how:



Thus, when Cunningham took a step toward his house, he necessarily closed the horizontal distance between himself and Sergeant Packard. And at that point, it was reasonable for Sergeant Packard to stop Cunningham's approach.

Third, Cunningham was actively resisting arrest. After refusing to stop for over a minute, he defied Sergeant Packard's order to stay in his car. Under circuit precedent, that's active resistance. *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). Under that same precedent, Sergeant Packard could have used much greater force—a taser or knee strike—to subdue Cunningham. *Id.* at 642. But he didn't. Instead, Sergeant Packard pushed Cunningham. That was a reasonable amount of force to stop Cunningham's resistance. Because circuit precedent authorized him to use greater force, Sergeant Packard was justified in using less.

In concluding otherwise, the dissent "start[s] the clock at the moment Cunningham exited his vehicle." Dissenting Opinion at 10. The problem is that the actual clock started earlier. Cunningham had refused to pull over—that is, disobeyed Sergeant Packard's lawful command— for over a minute and a half before Cunningham exited his vehicle. In police encounters as in everyday life, a person's perception of a given interaction includes the *entire* interaction. So when we ask what a reasonable officer would've perceived at a given time, we can't artificially restrict the relevant timeline. Here, that means we evaluate Sergeant Packard's use of force from the perspective of an officer who'd just pursued a fleeing suspect. We can't look past that initial act of resistance when determining whether the later use of force was reasonable.

\* \* \*

This case is about a simple push. Given the circumstances, that push didn't violate the Fourth Amendment.

B.

Cunningham makes five arguments in response. None is persuasive.

First, Cunningham suggests that Sergeant Packard had no reason to pull him over in the first place. But even if that were true, it wouldn't matter. "A different Fourth Amendment violation cannot transform a later, reasonable use of force into an unreasonable seizure." *County of Los Angeles v. Mendez*, 581 U.S. 420, 423 (2017). As we've already explained, Sergeant Packard acted reasonably, so the basis for the traffic stop is irrelevant.

Second, Cunningham argues that his crimes weren't that bad. He insists that because they were "only moderately severe," they didn't justify Sergeant Packard's use of force.[4] Appellant Br. at 29 (quoting *LaPlante v. City of Battle Creek*, 30 F.4th 572, 580 (6th Cir. 2022)). But as we've already explained, moderately severe crimes justify moderately severe force. And Sergeant Packard's push was minimally forceful; it's hard to imagine a lesser degree of force he could've used. Nor can Cunningham explain away the fleeing-and-eluding charge. He claims that he didn't pull over because he didn't hear or see Sergeant Packard's lights or siren. But this argument misses the point. We don't ask how the suspect perceived the situation. Rather, we view the circumstances "from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. Here, a reasonable officer in Sergeant Packard's position would have thought Cunningham saw the lights, heard the siren, and simply ignored them. In any event, even if Cunningham's crimes were trivial, the remaining circumstances tilt in Sergeant Packard's favor.

---

[4] Cunningham's crimes are undoubtedly dangerous. And it's hard to call a crime that kills thousands every year "only moderately severe." *See Drunk Driving*, National Highway Traffic Safety Administration, https://www.nhtsa.gov/risky-driving/drunk-driving (last visited Aug. 18, 2023). But we need not resolve this anomaly today—even under that innocuous label, Cunningham can't prevail.

Third, Cunningham suggests that he was so obviously drunk that no reasonable officer would have felt threatened. He also argues that, because Sergeant Packard should've assumed that the house was Cunningham's, it was unreasonable for him to perceive a threat from the situation. These arguments, however, only confirm that Sergeant Packard used reasonable force. As any bartender knows (and this court has acknowledged), "[d]runk persons are generally unpredictable." *Marvin v. City of Taylor*, 509 F.3d 234, 246 (6th Cir. 2007). Alcohol shortens fuses and clouds judgment. Sergeant Packard didn't know how Cunningham would react to his orders. But he could reasonably assume based on Cunningham's earlier refusal to pull over that it wouldn't go well. So when Cunningham moved toward him, Sergeant Packard reasonably kept him at arm's length with a push. In addition, even if Sergeant Packard assumed he was at Cunningham's house, the situation would only be more threatening. As far as Sergeant Packard knew, Cunningham could have family at the house who might escalate the situation. Or Cunningham might make a run for the house to get a weapon.

Fourth, Cunningham argues that his actions were simply a "passive refusal" to obey Sergeant Packard's commands. Appellant Br. at 41. Not so. Cunningham displayed the hallmarks of active resistance: "verbal hostility [and] a deliberate act of defiance." *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015). Walking away, to be sure, doesn't look like typical resistance. "But a suspect who ignores an officer's order . . . and walks away can 'reasonably' be considered to flee, even where the suspect does not run." *Thomas v. City of Eastpointe*, 715 F. App'x 458, 461 (6th Cir. 2017). Cunningham didn't run, but he actively resisted. So Sergeant Packard's use of force was reasonable.

Our other active-resistance cases are not to the contrary. In *Meadows v. City of Walker*, the "compliant, polite, respectful" suspect pulled over as soon as the officer activated his siren. 46 F.4th 416, 420–21 (6th Cir. 2022). The officer, who told the suspect that he was "not f******

around," issued the suspect inconsistent commands while the suspect was in his car, then immediately "grabbed" him and "threw him to the ground" once he got out. *Id.* at 419. A divided panel denied qualified immunity because "a reasonable jury could find a set of facts" showing the officer's force was unreasonable. *Id.* at 423–24. Here, on the other hand, the dashcam shows that Cunningham was noncompliant from the moment Sergeant Packard turned on his lights and siren. The indisputable facts show that Cunningham was verbally hostile and deliberately defied Sergeant Packard's orders. That's active resistance.

In both *Goodwin v. City of Painesville* and *Eldridge v. City of Warren*, moreover, officers ordered the suspect *out* of a particular location, and the suspects merely refused to leave. 781 F.3d at 323–24; 533 F. App'x 529, 533 (6th Cir. 2013). In both cases, we held that "failing to comply with an officer's commands, with nothing more," is not active resistance. *See Eldridge*, 533 F. App'x at 533. That's true. And if Cunningham had refused Sergeant Packard's order to get *out* of the car, this case might look like *Goodwin* and *Eldridge*. (Setting aside the minute-and-a-half chase preceding the driveway encounter.) But he didn't. Sergeant Packard ordered Cunningham to stay *in* his car, but Cunningham got out—in defiance of Sergeant Packard's order—and walked away. That's more than the mere verbal resistance in *Goodwin* and *Eldridge*.

Finally, Cunningham invokes his injuries to show that Sergeant Packard's use of force was unreasonable. It's true that Cunningham hurt his leg when Sergeant Packard pushed him. But as we've explained, we consider the force used—not "the 'extent of the injury inflicted'"—in an excessive-force analysis. *Miller v. Sanilac County*, 606 F.3d 240, 252 (6th Cir. 2010) (quoting *Morrison v. Bd. of Trs.*, 583 F.3d 394, 407 (6th Cir. 2009)). Reasonable force is reasonable regardless of the injuries it might cause.

In sum, Sergeant Packard didn't violate the Fourth Amendment when he pushed Cunningham. Sergeant Packard is thus entitled to qualified immunity, and the district court properly granted summary judgment in his favor.

We affirm.

COLE, Circuit Judge, dissenting. A reasonable jury could find that Troy Packard, a police officer in the Benzie County Sherriff's Department, violated Bruce Cunningham's clearly established Fourth Amendment right by giving him less than five seconds to comply with commands before shoving him to the ground without telling him he was under arrest. Admittedly, this case might be a close call. But because close calls are for juries, and not us, I would reverse the grant of summary judgment for qualified immunity, and remand to the district court for further proceedings. I respectfully dissent.

I.

I begin by highlighting two pieces of evidence in the record because they have significant bearing on Cunningham's claim. Both points are material to this case because their resolution affects the outcome of the excessive force analysis and the question of whether the right here was clearly established.

First, the majority opinion states that Cunningham, after exiting his vehicle, "started walking toward [Packard]," and was "advancing toward" and "came within striking distance of [Packard] . . . [who] had a right to keep Cunningham from coming any closer." (Maj. Op. at 2−4.) However, the parties and the district court agree that the dashcam footage depicts Cunningham walking towards his residence—not towards Packard. (Order, R. 37, PageID 256.)

Second, the majority states succinctly that, from Packard's perspective, "Cunningham had repeatedly disobeyed [Packard's] commands" and "was a drunk, defiant suspect who had just led [Packard] to an unknown location." (Maj. Op. at 4.) But this statement must be viewed in context. Starting the clock at the moment Cunningham exited his vehicle, the dashcam footage depicts Packard issuing three rapid commands in less than five seconds before pushing Cunningham to the ground. Given these circumstances, our inquiry centers on whether Cunningham's failure to

obey multiple orders in a five-second timeframe amounts to active resistance. To my mind, this is a question clearly for a jury and not this court.

I proceed to the analysis with these two points in mind.

II.

We review a district court's decision at the summary judgment stage de novo. *Summer v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). Summary judgment is inappropriate if the evidence presented reveals a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(c)). Material facts are "facts that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* We look at materials in the record to determine if the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(1). "In conducting the summary judgment analysis, we must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party"—here, Cunningham. *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

In this case, the relevant factual events are captured by Packard's dashcam footage. But even when there is video evidence, "we must nonetheless view any relevant gaps or uncertainties left by the videos in the light most favorable to [Cunningham], and must also make all reasonable inferences in [Cunningham's] favor when undertaking the qualified immunity analysis on summary judgment." *See LaPlante v. City of Battle Creek, Michigan*, 30 F.4th 572, 578 (6th Cir. 2022) (internal quotations and citations omitted); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (stating a "court should not adopt [a party's] version of the facts" when it is "*blatantly* contradicted by the record, s[uch] that no reasonable jury could believe it") (emphasis added). As such, if there are

disputed facts that are not accurately resolved by the video (there are), then we still must draw those inferences in Cunningham's favor if it is reasonable to do so.

A.

To overcome an assertion of qualified immunity, a plaintiff must first show that an officer's conduct violated a plaintiff's constitutional right; and if there is a violation, then the plaintiff must also show the right was clearly established. *Harlow v. Fitzgerald*, 457 U.S. 800, 818−19 (1982). Here, qualified immunity is inappropriate on an excessive-force claim where an officer's use of force was objectively unreasonable, which turns on: (1) "the severity of the crime at issue," (2) whether the individual posed an immediate safety threat, and (3) whether the individual was "actively resisting arrest or attempting to evade arrest[.]" *Graham v. Connor*, 490 U.S. 386, 396 (1989). These factors are not exhaustive. *LaPlante*, 30 F.4th at 579.

The only challenged conduct material to this appeal is Packard's initial use of force: when he threw Cunningham to the ground. Importantly, at the summary judgment stage, we need not decide whether Cunningham's Fourth Amendment right was violated by Packard's use of force, or whether such violation was clearly established. Rather, we ask if Cunningham presented sufficient evidence to create a genuine dispute of material fact. *See Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015). If Cunningham meets this burden, then qualified immunity must be denied, and such disputes must be reconciled by the factfinder. *Hernandez v. Boles*, 949 F.3d 251, 258–59 (6th Cir. 2020) (quoting *Goodwin*, 781 F.3d at 320–21).

B.

Considering the *Graham* factors and resolving all disputed questions of fact in Cunningham's favor, a reasonable jury could find that Packard's force was objectively unreasonable, and therefore excessive, under the totality of circumstances. *See Moore v. City of*

*Memphis*, 853 F.3d 866, 870 (6th Cir. 2017) ("An officer's use of force is excessive if, under the totality of the circumstances, the force was objectively unreasonable.")

1.

First, we address the severity of the alleged crimes. Our case law establishes that driving under the influence, fleeing and eluding, and operating a vehicle without a registration plate are not severe crimes under *Graham*'s first factor. I agree with the district court's finding that because these crimes are "not particularly severe, the first *Graham* factor weighs against reasonableness as to [Packard's] first use of force." (Order, R. 37, Page ID 264.) When he shoved Cunningham to the ground, Packard likely had "probable cause to arrest [Cunningham] for the misdemeanor offense of operating a vehicle under the influence of alcohol," which we have held is "only moderately severe from the perspective of 'a reasonable officer on the scene.'" *See LaPlante*, 30 F.4th at 580 (quoting *Graham* 490 U.S. at 396); *see, e.g.*, *Eldridge v. City of Warren*, 533 F. App'x 529, 532 (6th Cir. 2013) (stating driving under the influence is not a categorically severe crime); *cf. Gaddis v. Redford Twp.*, 364 F.3d 763, 767, 774 (6th Cir. 2004) (fleeing and eluding is a moderately severe crime).

Nonetheless, we must still examine the specific factual circumstances when evaluating the severity of the crimes in this case. *Eldridge*, 533 F. App'x at 532−33 (collecting cases). Notably, there is "no allegation [here] that [Cunningham's] offense[s] w[ere] violent or otherwise resulted in any injuries." *LaPlante*, 30 F.4th at 580. To the contrary, and despite the majority's contention that Packard "could have reasonably concluded that Cunningham would pose a danger to other motorists if allowed to flee,"[1] no such danger existed. A reasonable jury could conclude that the

---

[1] The majority cites *Gaddis* in support of Packard's proposition that Cunningham still posed a danger to other motorists. The facts in *Gaddis* are quite different. 364 F.3d at 766, 774 (qualified immunity granted where plaintiff drove erratically, tried to evade police by driving away after initially stopping at a red light, and was allegedly brandishing a knife next to his car). Notwithstanding these differing facts, we still stated in *Gaddis* that "fleeing an officer" was "moderate in severity." *Id.* at 774.

dashcam footage shows Cunningham slowly getting out of his car, closing his door, and walking towards the rear steps of his own home. Indeed, just as a "jury could conclude that disorderly conduct is not a 'serious' crime when determining whether an officer used excessive force in effecting the arrest for that crime," so too could a jury determine driving under the influence or fleeing and eluding are not severe under these circumstances. *Goodwin*, 781 F.3d at 322.

2.

The majority concludes the second factor weighs against Cunningham based on three assertions: (1) "Cunningham came within striking distance of [Packard] . . . [who] had a right to keep Cunningham from coming any closer," (2) Cunningham was "defiant" because he "had repeatedly disobeyed [Packard's] commands," and (3) Packard "didn't know if Cunningham was armed[,] [n]or did he know if there were other potential threats in the car or the house." There is conflicting evidence in the record on all three points. (Maj. Op. at 3−4.)

Plainly, the first fact is "blatantly contradicted by the [dashcam footage], [such] that no reasonable jury could believe it." *Scott*, 550 U.S. at 380. Neither party alleged—nor did the district court find—that Cunningham was advancing towards Packard after exiting the vehicle. Both parties and the district court instead view the dashcam as showing Cunningham walking towards his own residence, not towards Packard. (Order, R. 37, PageID 256) (Appellant Br. 4) (Appellee Br. 5) ("Cunningham exited his own vehicle and began walking toward the rear steps of the residence.") A reasonable jury could certainly come to the same conclusion as both parties and the district court. And since "determining reasonableness in this context is such a fact-intensive endeavor, summary judgment is improper if the legal question of immunity turns on which version of the facts is accepted." *Griffith v. Coburn*, 473 F.3d 650, 657 (6th Cir. 2007) (citation omitted).

The majority cites to one unpublished opinion, *Zuress v. City of Newark*, 815 F. App'x 1, 5−6 (6th Cir. 2020), to support their last two propositions: that it was reasonable for Packard to view Cunningham as defiant, and that it was reasonable for Packard to believe there were potential threats in the residence or car. (Maj. Op. at 3−4.) The context of the specific facts in *Zuress* are important, just as they are in Cunningham's case.

In *Zuress*, the plaintiff was driving an SUV, and a suspect who lived at "a drug house" rode as a passenger. *Zuress*, 815 F. App'x at 3. The suspect "was [also] the subject of an outstanding warrant for unpaid child support" and a potential "armed robbery." *Id*. When the plaintiff's SUV was first pulled over by the police after committing a traffic infraction, the suspect "abruptly opened the driver's side door and fled." *Id.* Then, roughly nineteen seconds after the SUV stopped and her companion fled, the plaintiff drove away without authorization. The plaintiff was intercepted shortly after driving away, but she again refused to comply with police after exiting her vehicle. *Id.* There, we found that the plaintiff was an immediate threat under *Graham* because "[she] was not complying with officers' commands . . . [by] arguing, waving her hands around, turning to face the officer, and [] reach[ing] for her waistband where a weapon could have been." *Id.* at 5. Further, the officer did not know "whether more [armed] people were in the vehicle," and the initial investigation was related to a "known drug house" and potential "armed robbery." *Id.*

The disputed facts in Cunningham's case are distinguishable, so a jury would use a much different record from *Zuress* to determine facts. Cunningham, a sixty-four-year-old man, was driving under the influence when Packard activated his patrol lights. Cunningham parked his vehicle in his own driveway less than two minutes after the patrol lights and sirens were activated, and he was thrown to the ground less than five seconds after exiting his vehicle. Packard justifies

this force by arguing that it was reasonable to perceive Cunningham as a threat because he could potentially have weapons or family members in the house, which could be dangerous.[2]

Given the conflicting interpretations of the dashcam footage, and viewing the circumstances in a light most favorable to Cunningham, it is for a jury to determine whether it was objectively reasonable for Packard to assume that Cunningham walking in his driveway towards his home presented an immediate threat. Indeed, a reasonable jury could find that Cunningham's "failure to promptly obey" Packard's commands in less than five seconds "did not place [Packard] in such a dangerous situation" requiring the use of force. *See LaPlante*, 30 F. 4th at 579 (finding there were "genuine issues of material fact regarding the extent of [p]laintiff's cooperation" where officer's orders "were given in rapid succession over the course of only *thirty seconds*, [and] it was not clear whether [p]laintiff understood or was given sufficient time or opportunity to comply . . . before he was thrown to the ground") (emphasis added).

3.

In sum, Cunningham argues Packard failed to tell him he was under arrest, and failed to provide adequate time—here, less than five seconds—to comply with his commands. (Appellant Br. 35.) These two points cut against, and create a dispute of material fact concerning, Packard's assertion that Cunningham resisted arrest. *See LaPlante*, 30 F. 4th at 580−81 (emphasizing that "Plaintiff claim[ed] that he *had not been told* that he was being arrested at th[e] point of the interaction" where the Officer alleged Plaintiff was resisting) (emphasis in original); *Richards v. County of Washtenaw*, 818 F. App'x 487, 492–93 (6th Cir. 2020) (denying qualified immunity where the "[plaintiff] sa[id] he was never told he was under arrest and there was not enough time

---

[2] Notably, Packard does not cite to any case law indicating it is reasonable for an officer to perceive a threat to his safety because a person "had family or friends" in their own home. (Appellee Br. 29.) This assumption, albeit still a consideration in our analysis, should not automatically resolve this factor in Packard's favor.

for him to have resisted the officers as they immediately converged on him . . ."); *cf. Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009) (denying qualified immunity where the officers attempted to take the plaintiff's belongings and began to use force without warning or further instruction).

Further, we have held that "the fact that a suspect does not immediately surrender does not inherently mean that he is resisting." *LaPlante*, 40 F.4th 580−81. (citing *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017) ("We have held that mere noncompliance is not active resistance.")) Two cases illustrate this point and show why this factor weighs in Cunningham's favor, or, at the very least, is a question better suited for a jury.

First, in *LaPlante*, we held that a reasonable jury could find that the use of force was excessive "where Plaintiff failed to comply with a number of the officer's verbal orders to show his hands, put down his beer, and put his hands behind his back." *LaPlante*, 40 F.4th at 579. We stated that the "[p]laintiff's behavior—particularly considering the disputes of fact that the video fail[ed] to clarify—d[id] not necessarily amount to active resistance" when "the orders were given in rapid succession over the course of only thirty seconds, [and] it was not clear whether Plaintiff understood or was given sufficient time or opportunity to comply with some of the orders before he was thrown to the ground." *Id.* at 579−80.

In *Meadows v. City of Walker, Michigan*, "[t]he moment the Plaintiff stepped out of the vehicle [the officer] immediately grabbed [plaintiff] and threw him to the ground." 46 F.4th 416, 419 (6th Cir. 2022). We explained there that because a "*jury* could reasonably conclude that from the officers' perspective [plaintiff] could not be seen as possibly engaged in active resistance, [] qualified immunity was not [] warranted." *Id.* at 424 (emphasis in original).

Finally, Cunningham argues that—in response to Packard's commands to "get back in the car"—Cunningham said "Oh, I'm not" instead of "No, I'm not" during the five second timeframe. The video is unclear, and, as a result, the parties dispute this fact. But Cunningham's "version of events is [not] so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380. Accordingly, this dispute must be viewed in the light most favorable to Cunningham because the active resistance determination is a critical factor in this case. *Griffith*, 473 F.3d at 657. Indeed, where "the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability and thus summary judgment should not be granted." *Id.* (internal marks and quotation omitted).

Moreover, the dispute about Cunningham's response to Packard matters because the "constitutional analysis" for this factor "turns on whether" the plaintiff's conduct "constitute[d] 'active resistance,' as opposed to passive resistance or no resistance at all." *Goodwin*, 781 F.3d at 323 (quoting *Hagans v. Franklin Cnty. Sherriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)). Active resistance "can take the form of 'verbal hostility' or a 'deliberate act of defiance.'" *Id.* (quoting *Eldridge*, 533 F. App'x. at 534-35). In *Goodwin*, we held that the plaintiff's "single statement that he would not leave his apartment, or the fact that he remained in his apartment rather than exiting," did not amount to active resistance. *Id.* at 534−35. In *Eldridge*, the officers thought the plaintiff was drunk, and the plaintiff "repeatedly refused [the] officers' orders to exit his vehicle"; there too we held that the plaintiff's "repeated refusal to comply constitute[d] only passive resistance that was not sufficient to legitimize the officers' use of force." *Id.* (citing *Eldridge*, 533 Fed. Appx. at 55).

Even if Cunningham responded to Packard's orders with a *single statement* of "No, I'm not," a jury could find that this does not constitute active resistance. *Id.* at 534−35. In fact, given the boundaries set by our precedent, it would certainly be reasonable for a jury to instead find

Cunningham's single unclear statement, which he made while walking towards his own residence, is "minimal, passive resistance that cannot justify [Packard's] use of force." *Osborn v. City of Columbus, Ohio*, No. 22-3570, 2023 WL 2523307, at *5 (6th Cir. Mar. 15, 2023) (analyzing "whether [plaintiff's] movement constitutes 'resistance' in this situation creates a question of fact better suited for a jury") (quoting *Smith v. City of Troy*, 874 F.3d 938, 945−46 (6th Cir. 2017)).

C.

Whether Cunningham actively resisted also bears on whether the constitutional right in this case was clearly established. This is because the "consensus among our cases is that officers cannot use force . . . on a detainee who . . . is not told he is under arrest, or is not resisting arrest." *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) (collecting cases); *see also Adams v. Metiva*, 31 F.3d 375, 380 (6th Cir. 1994) (excessive force claim could be supported where police used force on allegedly intoxicated plaintiff who was walking away and was not told he was under arrest). The active resistance factor is central to Cunningham's claim: if a jury determined that he was not actively resisting or attempting to evade arrest, then it could also find that Packard's use of force was both unconstitutional and in violation of a clearly established right. *See, e.g., Meadows,* 46 F.4th 416, 422−23 (collecting cases) ("It has been clearly established for several years in the Sixth Circuit that an officer cannot use injurious physical force to subdue a suspect that is not actively resisting arrest."). Even more pertinent here, "we have applied this clearly established constitutional right in the context of a traffic stop where the suspect was not actively resisting arrest." *Id.* at 423.

Packard contends that "[p]ushing [Cunningham] to the ground was the least amount of force [Packard] felt possible to effectuate the [detention/arrest]." (Appellee Br. 7.) That is beside the point. If a person is not actively resisting arrest or trying to evade the police, that person has a right to be free from the use of physically injurious force. *See Meadows*, 46 F.4th 416, 422−23.

This is all the more true when a person, drunk or not, is walking in their own driveway, is not told they are under arrest, and is given less than five seconds to comply with an officer's command before being thrown to the ground.

### III.

The material disputes of fact in this record are better suited for a jury, so I would reverse the district court's grant of summary judgment. I respectfully dissent.